1

2

3

4

5

6

7

8                             UNITED STATES DISTRICT COURT
                             WESTERN DISTRICT OF WASHINGTON
9                                        AT SEATTLE

10   RICHARD BIRD,                              CASE NO. C12-1553 MJP

11                   Plaintiff,                 ORDER ON DEFENDANT'S
                                                MOTION FOR PARTIAL
12          v.                                  SUMMARY JUDGMENT

13   AMERICAN FAMILY MUTUAL
     INSURANCE COMPANY,
14
                     Defendant.
15

16
            The Court, having received and reviewed:
17
            1.  Defendant's Motion for Partial Summary Judgment (Dkt. No. 59)
18
            2.  Plaintiff's Opposition to Defendant's Motion for Partial Summary Judgment  (Dkt.
19
                No. 65)
20
            3.  Defendant's Reply in Support of Defendant's Motion for Partial Summary Judgment
21
                (Dkt. No. 71)
22
     and all attached declarations and exhibits, makes the following ruling:
23

24

1    IT IS ORDERED that the motion is PARTIALLY GRANTED: Plaintiff will not be

2    permitted to recover non-economic damages under his Consumer Protection Act claim.

3    IT IS FURTHER ORDERED that the remainder of the motion is DENIED.

4                                                    **Background**

5    Plaintiff was insured by Defendant under a Personal Injury Protection ("PIP") policy

6    which covered both medical expenses and lost income.  Plaintiff was involved in 3 auto

7    accidents and submitted claims for all of them under his PIP policy.

8    The first accident ("Accident 1") occurred on February 8, 2007, when a car containing

9    Plaintiff and his wife was struck from behind by a bus.  Following a reference by his primary

10   care provider, Plaintiff underwent 4 months (June – October 2007) of massage, acupuncture and

11   chiropractic treatments.  In October 2007, Defendant requested an Independent Medical

12   Examination ("IME") of Plaintiff.  The IME was conducted on November 2, 2007 and the

13   examining physicians concluded that, while treatment up to that point had been reasonable and

14   necessary, Plaintiff had reached "maximum medical recovery."  For his part, Plaintiff still

15   complained of pain.  On November 12, 2007, Defendant discontinued payment of benefits for

16   treatment related to Accident 1 and closed Plaintiff's PIP file.

17   The second accident ("Accident 2") occurred on November 13, 2007 – Plaintiff was rear-

18   ended by another vehicle at a stop light.  From November 2007 to February 2008, Plaintiff

19   received massage, acupuncture and chiropractic treatments, but continued to experience low

20   back pain radiating into his lower extremities.  Plaintiff's chiropractor noted that her patient

21   would be getting a referral for an MRI, and Defendant notes that the last date of health care

22   services related to Accident 2 was April 25, 2008

23   Plaintiff's third accident ("Accident 3") was the result of a single-vehicle collision

24   (Plaintiff hit a gate pole while turning his car around) on February 12, 2008.  Again, Plaintiff

received massage, acupuncture and chiropractic treatments and again he continued to complain of low back pain despite the treatments. Defendant paid for treatments related to Accident 2 and Accident 3 through April 26, 2008. Although Defendant does not say so specifically, it appears that Plaintiff's PIP files were closed at this time.

On April 4, 2008, Plaintiff had undergone an MRI which revealed disc protusions from L4 – S1. In June of that year, Plaintiff was seen by an M.D. (Dr. Chilczuk) who recommended epidural steroid injections. Plaintiff received the injections but the pain did not abate, so Dr. Chilczuk recommended a nerve root block. This procedure was performed, but again Plaintiff experienced no abatement of his symptoms. So, on September 9, 2008, Dr. Chilczuk referred Plaintiff for a surgical consultation.

On October 3, 2008, Plaintiff consulted with Dr. Thompson, who concluded that Plaintiff was a spinal fusion candidate. According to Defendant, Plaintiff advised them on November 7, 2008 "that he planned to have surgery for three herniated discs and he believed the surgery was related to his first motor vehicle collision." Mtn, p. 5. On November 17, 2008, Plaintiff underwent spinal fusion surgery. He did not make a claim with Defendant at the time of the procedure, but alleges that he has been unable to work since the surgery.

In February of 2009, after ongoing complaints of right leg pain, a followup MRI revealed herniated discs above the area of the spinal fusion. When epidural injections did not alleviate the pain, Dr. Thompson recommended a second surgery. On March 31, 2009, Plaintiff underwent a right-sided laminectomy and diskectomy at L2-L3 and L3-L4. Again, Plaintiff made no claim with Defendant at the time of the procedure.

1        In May, 2009, Plaintiff followed up with Dr. Thompson, still complaining of low back

2   and right leg pain.  On September 28, 2009, Plaintiff had a third surgical procedure, another

3   spinal fusion operation.

4        On January 29, 2010, Plaintiff (through his attorney) sent a letter to Defendant advising

5   the insurer of the surgeries, the associated medical expenses and the lost earnings.  The letter was

6   a request to reopen the PIP files for all three accidents and to tender payment under the policies

7   for Plaintiff's medical bills and lost income.  *See* Kang Decl., Ex. D.  In response, Plaintiff

8   received a voicemail from Defendant's PIP adjuster advising that Defendant would not be

9   reopening the PIP files as requested.

10        On February 9, 2010, Plaintiff responded with a letter questioning Defendant's reasoning

11   in refusing to reopen the files and indicating that failure to do so could be considered

12   unreasonable and a violation of the Insurance Fair Conduct Act ("IFCA").  *See* RCW 48.30.015.

13   Kang Decl., Ex. E.  Defendant again indicated, in a reply letter, that it would not reopen the files

14   to consider payment for the surgical treatments or lost income.  Id., Ex. F.

15        Plaintiff filed suit against Defendant in King County Superior Court on August 6, 2012.

16   On August 13, 2012, he filed an amended complaint stating causes of action for bad faith, breach

17   of fiduciary duty, breach of contract, negligence and violations of IFCA and the Washington

18   Consumer Protection Act ("CPA").  On September 12, 2012, Defendant removed the action to

19   this Court.

20                        **Discussion**

21   Accident 1

22   Defendant attacks Plaintiff's causes of action as they pertain to Accident 1 on two grounds.

23

24

ORDER ON DEFENDANT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT- 4

1   *Pre-IFCA*

2       The IME based related to Accident 1 was held on November 2, 2007 and the PIP benefits

3   were discontinued on November 12, 2007; IFCA was enacted on December 6, 2007.  Defendant

4   argues that, because IFCA was enacted <u>after</u> the discontinuation of Plaintiff's PIP benefits and is

5   not retroactive, IFCA does not apply to any claim related to Plaintiff's first accident.

6       The argument is flawed in its premise: the assumption that Plaintiff's IFCA claims arise

7   from the termination of his PIP file following the IME.  The precipitating event for the IFCA

8   claims at issue was not the closing of the PIP file, but the refusal to reopen the file following

9   Plaintiff's request in January 2010.  "The statutory language shows that the 'precipitating event'

10  that gives rise to the application of the IFCA is the unreasonable denial of a claim for coverage."

11  <u>Malbco Holdings, LLC v. AMCO Ins. Co.</u>, 546 F.Supp.2d 1130, 1133 (E.D.Wa, 2008)(citing

12  RCW § 48.30.015(1)[1]).  Plaintiff is not claiming that the original termination of his PIP benefits

13  in 2007 was unreasonable; Defendant's liability (if any) arises from its refusal to reopen the file

14  and investigate Plaintiff's new claim to see if it was related to injuries received in the first

15  accident.

16      Defendant cites <u>Malbco</u> in support of its argument that resubmission of a pre-IFCA claim

17  after enactment of the statute does not create a new IFCA violation.  It is not a persuasive

18  argument – the case is not factually analogous to the circumstances here.  In the first place, the

19  "resubmitted" claims in <u>Malbco</u> were still submitted <u>before</u> the enactment of IFCA, so the case is

20  really about nothing other than the retroactivity of the statute. Secondly, although the

21  resubmitted claim concerned the same water damage to the property as the original claim, the

22

23

24      [1] "Any first party… who is unreasonably denied a claim for <u>coverage</u> or payments…" (emphasis supplied)

1    plaintiff in <u>Malbco</u> was arguing that the claim never should have been denied <u>at all</u>.  Plaintiff

2    here is not arguing that the termination of PIP benefits in 2007 was incorrect; he contends that

3    his injury was aggravated/reactivated by later events and that he had, in essence, a new claim

4    arising from the old injury.  <u>Malbco</u> is inapplicable and Plaintiff has a post-IFCA claim arising

5    out of the first accident.

6    <u>*Statutes of Limitation*</u>

7         Defendant reiterates its "precipitating event" argument (that any cause of action related to

8    the Accident 1 arose in November 2007 when the PIP file for that accident was originally closed)

9    to assert that the statute of limitation for Plaintiff's IFCA, bad faith, breach of fiduciary duty and

10   CPA claims had run prior to the filing of the complaint.

11        It is no more persuasive an argument than in the first instance.  Failure to conduct a

12   reasonable investigation prior to denying coverage has been held to constitute bad faith in the

13   State of Washington, even if the coverage issue is ultimately decided in favor of the insurer.

14   <u>Coventry Assoc's v. American State Ins. Co.</u>, 136 Wn.2d 269, 281 (1998).  The refusal to reopen

15   a file to investigate coverage on a new claim starts the statute of limitations clock ticking, not the

16   prior closing of the file.

17        Plaintiff's claims accrued on February 4, 2010 and he filed his complaint within the

18   statutory limitations period for all his causes of action.

19

20   <u>IFCA Cause of Action – Denial of Claims</u>

21        Defendant attempts to argue that that, since there was no "unreasonable denial" of a

22   claim here, there can be no IFCA violation.  The argument is premised on the holding in <u>Country</u>

23   <u>Preferred Ins. Co. v. Hurless</u>, 2012 WL 2367073 (W.D. Wash.) where the Honorable Ricardo S.

24

1 | Martinez of this district refused to find IFCA liability, based on his conclusion that the delay in

2 | paying the insured arose out of dispute over the <u>amount</u> of coverage, not whether the insured was

3 | covered at all.

4 |      <u>Hurless</u> is inapplicable to the facts of this case.  In <u>Hurless</u>, there was a delay in paying

5 | the insured which arose out of a dispute over the amount of wage loss he had suffered – Hurless

6 | claimed that the delay amounted to an "unreasonable denial" of benefits, but Judge Martinez

7 | disagreed, saying that the dispute was reasonable and that Hurless had contributed to the delay

8 | by his own inaction.  <u>Id.</u> at *4.  But the fact remains that Hurless received full payment of his

9 | benefits.  The question before this Court does not involve a delay and eventual payment of

10 | benefits – Defendant refused to even investigate Plaintiff's claim, much less pay out any

11 | benefits.  The fact that the company had previously paid out benefits under the PIP policy does

12 | not make their later refusal to reopen the file "a dispute over the amount of coverage."  It

13 | remains a failure to investigate issue and Plaintiff has adequately pled that the alleged failure

14 | amounted to an unreasonable denial of benefits.

15 |

16 | <u>IFCA Cause of Action – Damages</u>

17 |      Defendant attacks this cause of action on the grounds that all of Plaintiff's medical bills

18 | have been paid and that he received $250,000 for Accident 1 and $5,000 for Accident 2 from the

19 | at-fault parties.  This argument completely ignores the collateral source rule, which prohibits

20 | consideration of payments to a plaintiff which are independent of the party to whom liability

21 | attaches.  <u>Bowman v. Whitelock</u>, 43 Wn.App. 353, 357 (1986).

22 |      Plaintiff has pled an inability to work since his November 2008 surgery, and Defendant

23 | says nothing about his lost wages claim.  Plaintiff also claims (according to Defendant, for the

24 |

ORDER ON DEFENDANT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT- 7

1    first time) approximately $8700 in out of pocket expenses – consultations with doctors and hiring

2    an insurance expert to prepare for litigation – and non-economic damages of stress and financial

3    anxiety arising out of Defendant's conduct in this matter.[2]

4         Defendant further argues that its conduct was reasonable in the light of Plaintiff (1)

5    failing to inform the insurer of his surgeries, (2) waiting 15 months after the surgeries to request

6    repayment and (3) submitting no evidence that the surgeries were related to the accidents.

7         The Court finds the claim that Plaintiff failed to inform the insurer of the surgeries (a)

8    puzzling (Defendant states in its opening brief that Plaintiff advised the company on November

9    7, 2008 that "he planned to have surgery for three herniated discs and he believed the surgery

10   was related to his first motor vehicle collision;"  Mtn, p. 5) and (b) irrelevant (Defendant cites to

11   no policy language that requires Plaintiff to inform the insurer of a pending medical procedure; it

12   is the demand for coverage -- not the surgeries themselves – that is the activating event).  There

13   is no explanation regarding why Plaintiff waited so long to request repayment under the PIP

14   policy, but his PIP coverage was a "three years from date of accident" policy.  Since he was still

15   within that time period, the Court does not see how the delay operates as a mitigating factor in

16   the insurer's favor.  Defendant cites no statutory or case authority holding that any of this

17   impacts a determination of an insurer's reasonableness in refusing to investigate.

18        Defendant's claim that Plaintiff submitted no evidence that the surgeries were related to

19   the accident is contradicted by the exhibits filed in connection with this motion.  In his letter of

20   January 20, 2010, Plaintiff's counsel stated:

21

22

23   _____

24        [2] Defendant moves to strike the evidence of Plaintiff's out of pocket expenses because it has not been
     presented prior to the filing of this motion.  It cites no authority for this request.  The request is denied.

1    Mr. Bird was also seen by Dr. Frank Marinkovich, M.D. for an impairment rating.
     *According to Dr. Marinkovich, it is his professional opinion on a more probably than not*
2    *basis that "the three surgeries performed on [Mr. Bird's] lumbar spine were related to*
     *the three motor vehicle accidents mentioned above, and that surgery would not have*
3    *necessary but for the collisions.*

4    Plaintiff Ex. D, p. 7 (emphasis supplied).

5         In the light of this information, the Court finds that Defendant was informed, not only of

6    the procedures, but of the claim that the surgeries were causally related to the accidents.  By the

7    letter of January 20, 2010, Defendant was, at a minimum, put on notice of the possibility that

8    evidence existed connecting the medical procedures for which Plaintiff was submitting a claim to

9    the accidents for which Defendant had already provided coverage.  The Court is unable to state

10   as a matter of law that, with this information before it, Defendant's refusal to investigate was

11   reasonable, or that Plaintiff has failed to identify any damages flowing from the refusal to reopen

12   the PIP files and consider his claim.

13

14   Bad Faith Cause of Action

15        Defendant's arguments – which focus on the "reasonableness" of its actions and

16   Plaintiff's burden to establish (1) that the surgeries were within the scope of the policy and (2)

17   his damages – do not strike the Court as on point.

18        This is a "failure to investigate" case – when asked to provide coverage, Defendant

19   refused to do so, citing evidence (e.g., the fact that the IME had declared Plaintiff medically

20   stable after Accident 1 and that Plaintiff's chiropractor had closed out his billing after treating

21   him for Accidents 2 and 3) which it believed relieved it of its responsibility to make any further

22   payments under the policy.  It does not matter whether the company is ultimately vindicated in

23

24

ORDER ON DEFENDANT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT- 9

1  its decision to refuse coverage – the question is whether it was reasonable to refuse to investigate

2  the claim in the first place.

3  > We hold an insured may maintain an action against its insurer for bad faith investigation
> of the insured's claim and violation of the CPA regardless of whether the insurer was
4  > ultimately correct in determining coverage did not exist. An insurer's duty of good faith
> is separate from its duty to indemnify if coverage exists. The result creates no
5  > insurmountable burden on the insurer. The insurer is only required to fulfill its
> contractual and statutory obligation to fully and fairly investigate the claim.

6

7  Coventry Assoc's, *supra* at 280. The evidence will not support a finding that, as a matter of law,

8  Defendant "fully and fairly" investigated Plaintiff's claim at the time it was brought.

9  > Further, the issue of the reasonableness of Defendant's conduct is a question of fact.

> [A]n insurer is only entitled to a directed verdict or a dismissal on summary judgment of
10  > a policyholder's bad faith claim if there are no disputed material facts pertaining to the
> reasonableness of the insurer's conduct under the circumstances, or the insurance
11  > company is entitled to prevail as a matter of law on the facts construed most favorably to
> the nonmoving party. Indus. Indem. Co. of the NW, Inc. v. Kallevig, 114 Wash.2d 907,
12  > 920, 792 P.2d 520 (1990).

13  Smith v. Safeco Ins. Co., 150 Wn.2d 478, 484 (2003)

14  > Neither of those conditions is satisfied here. Defendant's motion for summary judgment

15  on the Plaintiff's bad faith claim will be denied.

16

17  Consumer Protection Act Cause of Action

18  > In order to establish his CPA claim, Plaintiff must prove all five elements of the

19  violation:

20  1. An unfair or deceptive act or practice;
    2. Occurring in trade or commerce;
21  3. That impacts the public interest;
    4. Causing injury to business or property which was
22  5. Proximately caused by the unfair or deceptive act or practice.

23  Hangman Ridge Training Stables v. Safeco Title Ins. Co., 105 Wn.2d 778, 784-85 (1986).

24

1    Defendant attacks the CPA claim on two of the elements.  First, Defendant attempts in its

2  reply briefing to establish that the "reasonableness" of its conduct is a defense to the claim that

3  any provisions of the Washington Administrative Code it violated in refusing to reopen

4  Plaintiff's PIP files constitute *per se* "unfair or deceptive acts or practices."  Since the Court has

5  already found that Defendant's conduct is not entitled to a summary judgment finding of

6  "reasonableness," that argument is unpersuasive.  Defendant is not entitled to a summary

7  judgment ruling that its practices were not "unfair or deceptive."

8    Second, Defendant argues that Plaintiff has not established proof of "injury to business or

9  property" as that term is defined in the context of the CPA.  In one regard, Defendant is correct.

10  To the extent that Plaintiff has pled non-economic damages as part of his CPA claim, the claim is

11  invalid.  "'[M]ental distress, embarrassment and inconvenience,' without more, are not

12  compensable under the CPA."  Keyes v. Bollinger, 31 Wn.App. 286, 298 (1982).  Plaintiff does

13  not even contest this point in his response.

14    However, Plaintiff has presented evidence of a host of other damages; i.e., the portion of

15  his surgery costs which he had pay (20% of $327,000 = $65,400), the income he lost by his

16  inability to work since November 2008 and the out of pocket expenses he details in his

17  responsive brief.  Additionally, there is the remaining 80% of his surgery costs, which under the

18  collateral source rule the Court must consider independently of whether any other insurance

19  carrier provided coverage.

20    Defendant wants to strike the evidence of Plaintiff's out of pocket expenses, but cites no

21  authority for that request.  Regarding the remainder of the expenses, Defendant cites Hiner v.

22  Bridgestone/ Firestone, Inc., 91 Wn.App. 772 (1998) for the argument that "damages in the form

23

24

1  of lost wages, out of pocket medical expenses, emotional pain and suffering, and litigation

2  expenses… do not qualify as injury to 'business or property' under the CPA." Reply, p. 12.

3    The rationale of <u>Hiner</u> is inapplicable to this case because it is factually inapposite. In

4  <u>Hiner</u>, the defendant was attempting to recover -- under a CPA claim -- damages for personal

5  injury (medical expenses, lost wages, etc.) directly from a manufacturer (i.e., under a theory that

6  the manufacturer was responsible for her injuries). When the <u>Hiner</u> court ruled that "personal

7  injuries are not recoverable under the CPA" (<u>Id.</u> at 730), it was referring to the fact that actions

8  for personal injury were not within the intent of the Washington legislature when it created the

9  CPA. *See* <u>Wash. State Physicians Ins. Exchange v. Fisons Corp.</u>, 122 Wn.2d 299, 318 (1993).

10    In contrast, Plaintiff here is not attempting to hold Defendant responsible for his injuries;

11  he is simply attempting to compel them to honor the terms of their contract and pay for his

12  treatment. He alleges that, because Defendant violated that contract by unreasonably refusing to

13  reopen his PIP files (the "unfair act"), he has suffered injury by virtue of having expended sums

14  of money which he claims Defendant was obligated to reimburse. The question is whether that

15  loss fits the definition of "property" as that word is understood in the context of the CPA.

16    The Court finds that it does. The Washington CPA cases attempting to come to an

17  understanding of the meaning of "injury to business or property" have drawn heavily on federal

18  cases interpreting an identical phrase in the context of the Clayton (Anti-Trust) Act. In <u>Reiter v.</u>

19  <u>Sonotone Corp.</u>, 442 U.S. 330 (1979), the Supreme Court said

20
21  …a consumer not engaged in a "business" enterprise, but rather acquiring goods or services for personal use, is injured in "property" when the price of those goods or services is artificially inflated by reason of the anti-competitive conduct complained of… A consumer whose money has been diminished by reason of an antitrust violation has
22  been injured "in his… property" within the meaning of § 4.

23  <u>Id.</u> at 339.

24

1    Under this rationale, the damages that Plaintiff has alleged qualify as "property" for CPA

2    purposes – his money has been diminished by reason of an "unfair act or practice" as defined by

3    the CPA.  The fact that the money was expended because of personal injuries to himself is

4    irrelevant to the context of the CPA violation complained of.  It could just as well have been a

5    business loss that Defendant insured against and then unreasonably refused to investigate.

6    Plaintiff's CPA claim will go forward (minus any non-economic damages claimed);

7    Defendant's summary judgment motion will be denied.

8

9                                    **Conclusion**

10    With the exception of the Court's ruling that Plaintiff's non-economic damages are

11    ineligible for relief under the Washington CPA, the remainder of Defendant's summary

12    judgment is DENIED.

13

14    The clerk is ordered to provide copies of this order to all counsel.

15    Dated October _29_, 2013.

16

17

18    Marsha J. Pechman
United States District Judge

19

20

21

22

23

24

ORDER ON DEFENDANT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT- 13